UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

3M Company,

      Plaintiff,

v.                                      MEMORANDUM OPINION
                                       & ORDER
                                       Civil No. 10-3849

Avery Dennison Corporation,

      Defendant.

_____

      John C. Adkisson and Ann N. Cathcart, Fish & Richardson P.C., Kevin Rhodes and William D. Miller, 3M Innovative Properties Company, Courtland L. Reichman, Natasha H. Moffitt and A. Shane Nichols, King & Spalding LLP, Counsel for Plaintiff.

      Kurt J. Niederluecke and Lora M. Friedemann, Fredrikson & Byron, P.A. and Charles K. Verhoeven, David Bilsker, Christopher E. Stretch and James E. Baker, Quinn Emanuel Urquhart & Sullivan, LLP, Counsel for Defendant.

_____

      This matter is before the Court on Defendant Avery Dennison Corporation's ("Avery") motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (1).

**Introduction**

      In this declaratory judgment action, Plaintiff 3M Company ("3M") seeks a

1

declaration that 3M is not infringing U.S. Reissue Patent Nos. 40,700 or 40,455[1] (collectively "the Heenan patents") and that such patents are invalid under 35 U.S.C. §§ 102,103, 112 and/or 251. 3M further seeks a declaration that it has absolute and equitable intervening rights under the Heenan patents pursuant to 35 U.S.C. § 252. For the reasons discussed herein, the Court finds that 3M has not demonstrated that a case or controversy exists to support jurisdiction over this declaratory judgment action.

**Factual Allegations**

In a related action, 3M brought suit against Avery alleging that Avery is infringing thirteen patents, the rights, title and interest having all been assigned to 3M, which cover different aspects of retroreflective sheeting. (Civil No. 10-2630) Specifically, 3M alleges that Avery makes, uses, and sells a product called the OmniCube T-11500 Prismatic Reflective Film that embodies the inventions claimed in the patents-in-suit. 3M also asserted three counts for declaratory relief concerning the Heenan patents that are now the subject of this action.

3M and Avery are competitors in the retroreflective sheeting market and

---

1 These patents are both entitled "Retroreflective Articles Having Microcubes, and Tools and Methods for Forming Microcubes." Complaint, Exs. A and B.

other markets. As competitors, the parties have also been involved in previous patent infringement litigation in the United States and overseas. (See Comp. ¶¶ 16-21.) 3M alleges that in connection with efforts to resolve the structured adhesive actions in 2005 and 2007, 3M became aware that Avery was monitoring 3M's launch of its Diamond Grade DG$^3$ sheeting product in comparison to the claims in the Heenan patents. (Comp. ¶ 23.) 3M further asserts it became aware that Avery had filed reissue patent applications for the Heenan patents to correct errors in those patents. (Id. ¶ 24.) 3M asserts that "upon information and belief" Avery sought reissuance of the Heenan patents to better position the patents for litigation. (Id. ¶ 26.)

On March 31, 2009, Avery's Chief Intellectual Property Counsel, Raj Sardesai, telephoned 3M's Chief Intellectual Property Counsel, Kevin Rhodes, to inform 3M that its Diamond Grade DG$^3$ product may infringe the Heenan patents and that licenses are available. (Id. ¶ 31.) On April 2, 2009, Rhodes telephoned Sardesai to inform Avery that 3M rejected Avery's previous offer to license the Heenan patents. (Id. ¶ 33.) During that conversation, Avery informed 3M that it had done an analysis to determine whether 3M's product did, in fact, infringe the Heenan patents, and that Avery would send claim charts. (Id.) No charts

3

were ever received from Avery, however. (Id. ¶ 34.) At no time did the parties discuss or agree that conversations concerning the Heenan patents would be deemed confidential. (Id. ¶ 35.)

3M asserts that in 2010, it became aware that Avery was to launch its first retroreflective sheeting product including full cube technology. (Id. ¶ 37.) Then, with respect to an unrelated patent, Avery filed suit against 3M in May 2010 in the United States District Court, District of Delaware, alleging that 3M's label sheets infringed Avery's U.S. Patent No. 7,709,071, which had issued that same day. (Id. ¶ 39.) Because Avery did not give 3M notice of this suit prior to filing, 3M believed that Avery, with the exception of certain standstill agreements, would not provide 3M prior notice before filing any suit alleging patent infringement. (Id. ¶ 40.) The parties did not have a standstill agreement concerning retroreflective sheeting or the Heenan patents. (Id. ¶ 41.)

On June 25, 2010, 3M filed Civil No. 10-2630 in this District. On the day that suit was filed, 3M's counsel called Avery's counsel to state that 3M believed a dispute exists between the parties concerning the Heenan patents, but if Avery would be willing to provide 3M with a covenant not to sue, 3M would dismiss the declaratory judgment counts concerning the Heenan patents. (Id. ¶ 44.) Avery

4

did not respond to this request. (Id. ¶ 45.) 3M asserts that it filed an amended complaint in the first action, without the claims for declaratory relief, in order to allow the parties to proceed as to 3M's patent infringement claims. (Id. ¶ 47.) Concurrently, 3M filed this declaratory judgment action. (Id. ¶ 48.)

3M asserts that the facts alleged in this declaratory judgment action show that a substantial controversy exists concerning the Heenan patents. 3M asserts that "on information and belief" Avery's strategy has been to raise the Heenan patents as negotiation tactics in patent disputes between the parties. (Id. ¶ 50.)

**Standard**

A court has subject matter jurisdiction under the Declaratory Judgment Act only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (footnote omitted). MedImmune's "all of the circumstances" standard reversed the Federal Circuit's prior "reasonable apprehension of suit" test. Id. at 132 n.11. The Federal Circuit now holds that, "following MedImmune, proving a reasonable apprehension of suit is one of multiple ways that a declaratory

judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008) (citation omitted).

In patent cases, declaratory judgment jurisdiction exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007).

"The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007) (citations omitted). The test for declaratory judgment jurisdiction is objective; therefore the subjective beliefs of the patent holder are irrelevant. Hewlett-Packard, Co. v. Acceleron LLC, 587 F.3d 1358, 1363 (Fed. Cir. 2008). "Thus, conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction." Id. Further,

> [i]n order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b) (1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.

Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefits of 12(b) (6) safeguards." Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). In this case, Avery asserts a factual challenge.

**Analysis**

Avery moves to dismiss this action on the basis that none of the facts pleaded by 3M, taken individually or together, establish a case or controversy over which this Court should exercise declaratory judgment jurisdiction.

In support of its position that a case or controversy did exist, 3M asserts that in March 2009, counsel for the parties had a series of telephone conversations regarding a former employee of a company that 3M owned. (Rhodes Decl. ¶ 11, Exs. 1, 2 & 3.) In a conversation that took place on March 31, 2009, Sardesai brought up the Heenan patents, stating that 3M's Diamond Grade DG³ reflective

sheeting "may infringe" the Heenan patents, and provided the patent numbers at issue. (Id. ¶12; Ex 4.) Sardesai does not recollect making such a statement, however. (Sardesai Decl. ¶ 8.) Sardesai also stated that licenses were available. (Rhodes Decl. ¶ 12.) Rhodes drafted an email response to Sardesai recounting the conversation, and sent the email to other attorneys at 3M. (Id. ¶ 14, Ex. 5; Miller Decl. ¶ 3.)

On April 1, 2009, 3M instituted a litigation hold related to Diamond Grade DG³ reflective sheeting and the Heenan patents. (Rhodes Decl. ¶ 15; Miller Decl. ¶ 4, Ex.1.) The next day, Rhodes telephoned Sardesai to inform him that 3M had rejected Avery's efforts to license the Heenan patents in 2005 and 2007, and that 3M's position had not changed. (Rhodes Decl. ¶ 16.) Rhodes asked Sardesai whether Avery had any new information that should cause 3M to revisit the decision not to take a license, to which Sardesai responded that Avery had done an analysis of 3M's Diamond Grade DG³ product with reference to the Heenan patents and that Avery would send claim charts. (Id.; Ex. 6.) No claim charts were ever received from Avery. (Id. ¶ 19.)

In the spring of 2010, 3M learned that Avery planned to launch its first full cube retroreflective sheeting product. (Miller Decl. ¶ 6.) Avery's product

8

would compete directly with 3M's Diamond Grade product. (Id.) On May 4, 2010, Avery initiated an action against 3M in Delaware concerning 3M's label sheets; a product that is unrelated to the patents at issue here. On June 25, 2010, 3M filed an action in this District alleging that Avery was infringing certain 3M patents regarding full cube technology, and seeking a declaratory judgment regarding the Heenan patents. After 3M filed suit, Rhodes called Sardesai and requested a covenant not to sue concerning the Heenan patents. (Rhodes Decl. ¶ 22.) Avery refused to agree to such a covenant. Rhodes sent an email on July 2, 2010, again addressing the Heenan patents and 3M's proposal that Avery issue a covenant not to sue. (Id. ¶ 23, Ex. 7.) Sardesai did not respond to this email. (Sardesai Decl. ¶ 17.)

3M asserts that these facts support a determination that a case or controversy exists with regard to the Heenan patents, as Avery plainly and openly asserted its rights under the Heenan patents in 2009. 3M further asserts the dispute is immediate and real, given the large volume of sales and distribution of its Diamond Grade product – the product accused of infringing the Heenan patents. Further, it is well known that patent owners often seek reissuance of patents to better position it for litigation. As Avery is 3M's sole

competitor in the retroreflective full cube sheeting market, 3M believes that reissue of the Heenan patents made it more likely that Avery would assert such patents against 3M. Finally, 3M asserts that the parties have been involved in multiple actions against each other – therefore 3M was justified in its concern that Avery would act with respect to the Heenan patents. See Teva Pharm. USA, Inc. v. Novartis Pharma. Corp., 482 F.3d 1330, 1344-45 (Fed. Cir. 2007).

Finally, 3M asserts that Avery's refusal to issue a covenant not to sue with respect to the Heenan patents further supports a finding that a case or controversy exists. See ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp., 699 F. Supp. 2d 664, 69-70 (S.D.N.Y 2010) (finding that a patent owner's refusal to amend covenant not to sue to include future sales supports declaratory judgment jurisdiction); Tuthill Corp. v. ArvinMeritor, Inc., 2008 WL 4200888, at *5 (N.D. Ill. Sept. 5, 2008) (finding declaratory jurisdiction in part because patent owner refused to provide covenant not to sue).

The Court first notes that the parties generally agree on the facts leading up to the filing of this declaratory judgment action, with the exception of whether Avery told 3M it "may infringe" the Heenan patents and whether the 2009

conversations were covered by a confidentiality agreement². But even accepting the facts as set forth by 3M, the Court finds that 3M has not met its burden of demonstrating that declaratory judgment jurisdiction existed at the time this action was filed. Benitec, 495 F.3d at 1344 (plaintiff has burden to demonstrate jurisdiction exists at the time the declaratory judgment action was filed).

The test for determining jurisdiction is objective, therefore 3M's subjective belief as to Avery's motives for instituting reissue proceedings concerning the Heenan patents is immaterial. Hewlett-Packard, 587 F.3d at 1363. Given the lack of evidence that Avery pursued the Heenan patents to enforce them against 3M, the Court finds it is objectively unreasonable for 3M to point to the reissuance proceedings as a basis for declaratory relief.³

The Court further finds that the prior litigation between the parties concerning unrelated patents and products does not support a finding of declaratory judgment jurisdiction in this case. See Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1341 (Fed. Cir. 2008) (finding that prior litigious conduct can be taken into consideration in determining the existence of a case or

---

2 3M concedes that conversations prior to 2009 were covered by a confidentiality agreement. (3M Brief at 7.) Therefore, the Court will not consider any conversation prior to 2009 in its determination of jurisdiction.
3 Avery asserts that it is in licensing negotiations with an unidentified third party regarding the Heenan patents. Thus, 3M is not the only company that would potentially benefit from such a license.

controversy, but one prior case involving an unrelated patent is not the type of conduct that supports such a finding).

When viewed under the totality of the circumstances, the Court finds that the alleged statements by Avery's counsel that 3M's Diamond Grade product may infringe the Heenan patents, that licenses are available and that Avery conducted an analysis of the Diamond Grade product compared to the Heenan patents, does not demonstrate that there existed "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127.

3M's reliance on Hewlett-Packard, Int'l Dev. Corp., and SanDisk is misplaced, as those cases are factually distinguishable. For example, SanDisk, the Federal Circuit determined that declaratory judgment jurisdiction existed based on the conduct of the patent owner – such as approaching the defendant about royalty payments; conducting a thorough infringement analysis and presenting such analysis in a slideshow during a licensing meeting, followed by a five hour presentation by the patent holder's technical experts "during which they identified and discussed the specific claims of each patent and alleged that

they were infringed by [the plaintiff]." SanDisk, 480 F.3d at 1375. Here, there is no evidence of repeated and detailed discussions concerning possible infringement or that Avery ever presented 3M with a detailed infringement analysis.

Similarly, in Hewlitt-Packard, the court found that declaratory judgment jurisdiction existed based on communications from a non-competitor patent holding company in which the company identified certain patents that it owned, and referenced the plaintiff's products and imposed deadlines by which to respond, and insisted that if the plaintiff did not respond "it would understand that HP did not 'have anything to say about the merits of this patent, or its relevance to [plaintiff's] . . . products." Id. 587 F.3d at 1363. By contrast, Avery, a direct competitor, did not impose any deadlines and made no reference to the merits of the Heenan patents and its relevance to 3M's products.

Further, the fact that 3M waited more than one year after Avery's alleged infringement "threats" to file this declaratory judgment action weighs against a finding of immediacy to warrant a declaratory judgment. See Geospan Corp. v. Pictometry Int'l Corp., 598 F. Supp. 2d 968 (D. Minn. 2008) (finding that two letters, in which patent owner stated that plaintiff's products may incorporate

technology covered by patent, sent with a claim chart order from an unrelated case does not demonstrate a case or controversy).   See also Baker Hughes Oilfield Ops., Inc. v. ReedHycalog, No. 2:05-CV-931 TS, 2008 WL 345849 (D. Utah Feb. 6, 2008) (finding no jurisdiction where the interactions between the parties did not indicate an affirmative act or an adverse legal position at the time the declaratory judgment action was filed); Monsanto Co. v. Syngenta Crop Protection, Inc., No. 4:07-CV-543 (CEJ), 2008 WL 294291 (E.D. Mo. Jan. 31, 2008) (finding that a single letter, in which the patent holder did not threaten litigation, include a claim chart or demand a royalty, not sufficient to establish declaratory judgment jurisdiction).

Finally, the Court will afford little weight to the fact that Avery refused to execute a covenant not to sue, given the fact that 3M requested such a covenant only after it had filed the original action which included both infringement claims and a request for declaratory relief.   See Network Video Tech., Inc. v. Nitek Int'l, LLC, No. C 08-2208, 2008 WL 4679541, at *6 (N.D. Cal. Oct. 21, 2008) (finding that the basis for jurisdiction would be undercut by conduct of declaratory judgment plaintiff directed to engineering jurisdiction).

Accordingly, based on the files, record and proceedings herein,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure [Doc. No. 6] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY

Date: March 28, 2011

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court

Civil No. 10-3849