# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

3M COMPANY,                                    Civil Action No. 10-cv-3849-MDJ/FLN

      Plaintiff,

      v.

AVERY DENNISON CORPORATION,

      Defendant.

---

## AVERY DENNISON'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

III.  ARGUMENT ...................................................................................................... 6

      A.    The Legal Standard To Establish The Right To Declaratory Relief ............ 7

      B.    Avery Never Made Any Threats Regarding the Heenan Patents ................. 9

            1.    The 2005-2007 Discussions Between Avery and 3M Cannot
                Form The Basis Of a Case or Controversy ........................................ 9

            2.    No Discussion from 2009 Is Factually Sufficient To Establish
                a Case Or Controversy .................................................................... 11

            3.    No Discussions From 2009 Are Legally Sufficient to Create a
                "Case or Controversy" Establishing Declaratory Judgment
                Jurisdiction. ................................................................................... 14

      C.    3M Cannot Manufacture Jurisdiction by Demanding a Covenant Not
          To Sue During  A Pending Case .............................................................. 15

      D.    Unrelated Prior Litigation Between Avery and 3M Should Be Given
          No Weight ............................................................................................... 18

      E.    3M's Subjective Fears of Future Infringement Litigation Should Not
          Be Considered in Determining Declaratory Judgment Jurisdiction ............ 20

IV.   CONCLUSION .................................................................................................. 22

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Avante Intern. Technology, Inc. v. Hart Intercivic, Inc.,*
No. 08-832-GPM, 2009 WL 2431993 (S.D. Ill. Jul. 31, 2009) ..................................... 17

*Bridgelux, Inc. v. Cree, Inc., No. C 06-6495 PJH,*
2007 WL 2022024 (N.D. Cal. Jul. 9, 2007)....................................................... 19

*Dow Jones & Co. v. Ablaise Ltd.,*
606 F.3d 1338 (Fed. Cir. 2010)......................................................................7

*Edmunds Holding Co. v. Autobytel Inc.,*
598 F. Supp. 2d 606 (D. Del. 2009)............................................................... 21

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118 (2007) .............................................................................. 7, 8

*Monsanto Company v. Syngenta Crop Protection, Inc.,*
No. 4:07-CV-543 (CEJ), 2008 WL 294291 (Jan. 31, 2008 E.D. Mo.)........................ 14

*National Presort, Inc. v. Bowe Bell & Howell, Co.,*
663 F. Supp. 2d 505 (N.D. Tex. 2009) ........................................................... 17

*Panavise Products, Inc., v. National Products, Inc.,*
306 Fed. Appx. 570, 572 (Fed. Cir. 2009)................................................... 7, 21

*Phoenix Consulting Inc. v. Republic of Angola,*
216 F.3d 36 (D.C. Cir. 2000) ......................................................................7

*Prasco, LLC v. Medicis Pharmaceutical Corp.,*
537 F.3d 1329 (Fed. Cir. 2008)............................................................. passim

*SanDisk Corp v. STMicroelectronics, Inc.,*
480 F.3d 1372 (Fed. Cir 2007)................................................................ 14, 15

*Skelly Oil Co. v. Phillips Petroleum Co.,*
339 U.S. 667 (1950) ...................................................................................8

*Sony Electronics, Inc. v. Guardian Media Technologies, Ltd*
497 F.3d 1271 (Fed. Cir. 2007).................................................................. 15

*The Wooster Brush Co. v. Bercom Intern., LLC,*
No. 5:06CV474, 2008 WL 1744782 (N.D. Ohio Apr. 11, 2008)............................... 15

## I.   INTRODUCTION

This is the second time that 3M has brought a Declaratory Judgment Complaint seeking a ruling that Avery Dennison's Heenan patents are invalid, not infringed, and subject to intervening rights.  Three months ago, 3M asserted the same claims along with affirmative claims of infringement on its own patents in Case No. 10:CV-02630 before this Court.  After Avery moved to dismiss the declaratory judgment claims for lack of a case or controversy, 3M dismissed the declaratory judgment claims from the case and re-filed them here as a separate action.  Despite 3M's legerdemain in filing a new action, its new pleading still fails to demonstrate that a case or controversy exists.

3M's new pleading shows that Avery never threatened it with litigation over the Heenan patents nor said that it must take a license.  Consequently, 3M now relies on its attempts to manufacture a controversy after the filing of its original complaint.  3M's new complaint emphasizes Avery's lack of response to 3M's post litigation request for a covenant not to sue on the Heenan patents.  Avery did respond.  It pointed out that the relevant question was 3M's basis for suit at the time the declaratory judgment action was filed and it requested that basis from 3M.  When 3M could not provide such basis, Avery filed its motion to dismiss the declaratory judgment claims in the original complaint.

3M cannot rely on its own gamesmanship to create jurisdiction.  It is not objectively reasonable to believe that a case or controversy exists because Avery did not grant 3M a covenant not to sue shortly before Avery's motion to dismiss pending declaratory relief claims was due.  Nor is it objectively reasonable to believe, as 3M argues, that lawsuits between 3M and Avery on unrelated patents and technology create

1

an objectively reasonable basis for declaratory relief. Last, 3M's subjective belief that

Avery will enforce the Heenan patents is not legally recognized as a basis for establishing

the right to declaratory relief. Accordingly, 3M's complaint should be dismissed with

prejudice.

## II.   BACKGROUND

Avery's United States Patents Nos. Re 40,700 and Re 40,455 ("RE700" and

"RE455," collectively "the Heenan Patents") are both "reissue" patents. Pursuant to

standard Patent Office practice and procedure, Avery returned the original issued patents

to the Patent Office for additional prosecution. Avery filed the original application for

the RE700 patent on May 30, 1996 and it issued on January 18, 2000 as United States

Patent No. 6,015,214 ("the '214 patent"). The Patent Office reissued the '214 patent as

RE700 on April 14, 2009. Likewise, Avery filed the original application underlying the

RE455 patent on December 2, 1999. It first issued on July 27, 2004 as United States

Patent No. 6,767,102 ("the '102 patent") and then reissued on August 12, 2008.

During some of the time the Heenan patents were in reissue proceedings, 3M and

Avery were involved in litigation concerning United States Patent No. 5,897,930 ("the

'930 patent") – an unrelated 3M patent directed to pressure-activated adhesives for large-

format graphics ("the Graphics Litigation"). (Maier Decl. at ¶ 12).

Beginning in about 2005 and extending through 2007, Avery and 3M participated

in a series of discussions concerning the possible settlement of the Graphics Litigation.

(*Id.*). During those discussions, the issue of including the Heenan patents as part of a

global cross licensing arrangement was raised. (*Id.*). Those discussions were amiable.

Avery never claimed that 3M infringed the Heenan patents or needed to take a license. (*Id.*). Nor did Avery threaten to enforce the Heenan patents sometime in the future. (*Id.*). In fact, to ensure there were no misunderstandings regarding the communications surrounding the settlement discussions or how those communications could be used, the parties executed Confidentiality Agreements covering all communications and disclosures related to the settlement negotiations. (*Id.*). The Confidentiality Agreements expressly provided that no information learned during those discussions between the parties could be used for purposes of establishing declaratory judgment jurisdiction in a later-filed proceeding. (*Id.* Exs. A, B at ¶ 4).

Since settlement of the Graphics litigation in 2008, Avery's Chief Intellectual Property Counsel, Raj Sardesai ("Sardesai") and 3M's Chief Intellectual Property Counsel, Kevin Rhodes ("Rhodes") have discussed many other issues. (Sardesai Decl. at ¶ 5). To foster open and frank discussions, Sardesai and Rhodes agreed that all of their communications are confidential. (*Id.*).

In light of past success in settling matters at early stages, Sardesai and Avery IP counsel, Michael Maier, participated in a phone call with Mr. Rhodes after 3M filed the original complaint. (Sardesai Decl. at ¶ 13; Maier Decl. at ¶ 9). In that call, Sardesai asked Mr. Rhodes for the basis of the declaratory judgment claims. (*Id.*). Mr. Rhodes responded by saying it was discussions between Avery and 3M business and legal people in the 2005 time frame. (Sardesai Decl. at ¶ 14; Maier Decl. at ¶ 10). ███████

███████████████████████████████████████████████

3

After the call, Rhodes sent an email to Sardesai asking for a covenant that Avery would never bring suit on the Heenan patents in exchange for 3M dropping its declaratory judgment claims. (Sardesai Decl. Ex. A). In the email, Rhodes did not mention any threats that Avery had made on those patents. (*Id.*). Sardesai did not respond to that email. Instead, on August 16, 2010, Avery's outside counsel asked 3M's outside counsel for the basis on which the declaratory judgment claims were brought. Specifically, Avery's counsel asked for the facts supporting the statement in paragraph 106 of the original complaint, which said that Avery "has indicated 3M needs to take a license to the Heenan patents." (Friedemann Decl. Ex. D).

3M's outside counsel responded to the question the next day by referring, as 3M's Rhodes had, to conversations that had taken place "since 2005." (*Id.* Ex. E). Given the generality of 3M's response, coupled with the fact that the discussions from 2005-2007 were covered by a confidentiality agreement and could not be used for declaratory relief, Avery again asked for more detail. (*Id.* Ex. F).

3M's counsel responded by again referring to events in 2005: "My understanding is that the history, which dates back to 2005 was explained to him [Raj Sardesai]. " (*Id.* Ex. G). Contrary to what Mr. Rhodes had said earlier, 3M's counsel then stated that there had also been a conversation in March of 2009 where Sardesai said that "3M needed a license." (*Id.*).

4

Given 3M's shifting story, and knowing that it had never threatened 3M with suit on the Heenan patents nor ever told 3M that it had to take a license to those patents, Avery moved on August 18, 2010 to dismiss 3M's declaratory judgment claims for lack of case or controversy. (*Id.* Ex. B). In that motion, Avery specifically identified the written agreements that precluded any declaratory judgment action being based on settlement discussion between the parties from 2005 to 2007. (*Id.* Ex. B at 3, 8). A week before its response to the motion was due, 3M amended its complaint to withdraw its declaratory judgment claims. (*Id.* Ex. C). 3M simultaneously filed this new declaratory judgment action. (Dkt. 1).

3M claimed the reason for its procedural maneuvers was that it wanted Avery to answer the remainder of the claims and move forward with discovery in 3M's original patent litigation, and that Avery was refusing to do so. (Friedemann Decl. at ¶ 6). Avery never refused to move forward with discovery in the original matter. (*Id.*) Instead, Avery specifically agreed in writing that it was willing to schedule a Rule 26(f) conference and begin discovery on the case as a whole. (*Id.* at ¶ 6, Ex. H).

3M's new complaint adds little factual support to the allegations in its first request for declaratory relief. It continues to rely on conversations from 2005-2007 that are covered by confidentiality agreements and prohibited from being used as a basis for a declaratory judgment action. (Maier Decl. at ¶¶ 12-13, Exs. A, B at ¶ 4). 3M still has identified no threats from Avery to enforce the Heenan patents. Nor has it identified communications where Avery said 3M must take a license to those patents.

Rather, contrary to earlier representations from 3M's Rhodes, 3M now claims that Avery's Raj Sardesai told 3M that it "may infringe the Heenan patents and licenses are available", and that Avery would send claim charts which it never did. (Dkt. 1, Complaint at ¶¶ 31, 33-34). Even if these statements were made, which they were not, they would not be sufficient to meet the objective criteria to establish a case or controversy.

## III.   ARGUMENT

3M seeks a declaration of non-infringement and invalidity of the Heenan patents, as well as a declaration of no liability based on alleged intervening rights. (Dkt. 1, Complaint at ¶¶ 55-67, Prayer for Relief ¶¶ A-E). 3M's basis for these claims has continually shifted since it filed its original complaint against Avery three months ago. In the current complaint, 3M relies on four bases to support subject matter jurisdiction: (1) alleged communications between the parties regarding the Heenan patents, (2) the two companies' "long history of fierce competition," (3) Avery not responding to 3M's request for a covenant not to sue on the Heenan patents after 3M filed suit, and (4) 3M's fears that Avery will someday sue for infringement of the Heenan patents. (*Id.* at ¶¶ 15-51).

These allegations are either inaccurate or, in total, do not rise to the level of an "actual case or controversy" necessary to invoke declaratory judgment jurisdiction. In summary, Avery never alleged that 3M's products infringed the Heenan patents, threatened a future patent infringement lawsuit, or indicated that 3M must take a license. 3M's reliance on competition in unrelated areas does not establish an "actual case or

6

controversy" with respect to the Heenan patents.  Likewise, Avery's failure to provide a covenant not to sue after this litigation began is not sufficient to create an actual controversy.  Finally, 3M's subjective fear of future litigation is afforded no weight in determining declaratory judgment jurisdiction.

### A.      The Legal Standard To Establish The Right To Declaratory Relief

3M, as the declaratory judgment plaintiff, bears the burden of showing that the facts alleged, under all the circumstances, support a finding that there is a "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Dow Jones & Co. v. Ablaise Ltd.,* 606 F.3d 1338, 1345 (Fed. Cir. 2010) (citing *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007)).  Once Avery challenges the sufficiency of the allegations in the complaint, 3M  must come forward with actual facts rather than generalized conclusions to satisfy its burden. See *Panavise Products, Inc., v. National Products, Inc.,* 306 Fed. Appx. 570, 572 (Fed. Cir. 2009) (holding that declaratory judgment defendant's motion to dismiss and supporting declaration presented a factual challenge sufficient to place the burden on the plaintiff "to demonstrate facts sufficient to support its contention regarding the court's jurisdiction.").  It is then up to the Court to weigh these facts and determine whether they support a finding of declaratory judgment jurisdiction. *See Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (when the defendant has challenged the factual basis of the court's jurisdiction, "the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.").

7

The Declaratory Judgment Act is not an independent basis for subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Rather, it merely provides a remedy in cases where jurisdiction already exists based on some other source. *See Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). Thus, like the claims of the underlying case, jurisdiction over a declaratory judgment claim is limited by Article III of the Constitution, which restricts federal judicial power to the adjudication of actual "cases and controversies." *See id.*

In *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the United States Supreme Court addressed the standard necessary to satisfy the "case or controversy" requirement of Article III in the context of a declaratory judgment action involving a patent dispute. The Court held that "the question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Following *Medimmune*, the United States Court of Appeals for the Federal Circuit further explained that "a case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the defendants – an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco*, 537 F.3d at 1339. Moreover, the Federal Circuit explained that to satisfy the "immediacy and reality" prong of the inquiry, the declaratory judgment plaintiff must show "(1) an injury-in-fact, *i.e.,* a harm that is 'concrete' and actual or imminent, not 'conjectural' or

8

'hypothetical,' (2) that is 'fairly traceable' to the defendant's conduct, and (3) redressable by a favorable decision." *Id.* at 1338. "Absent an injury-in-fact traceable to the patentee, there can be no immediate and real controversy." *Id.*

**B.     Avery Never Made Any Threats Regarding the Heenan Patents**

**1.     The 2005-2007 Discussions Between Avery and 3M Cannot Form The Basis Of a Case or Controversy**

3M can point to no communication where Avery ever threatened to enforce the Heenan patents or stated that 3M must take a license to those patents. Nonetheless, 3M first alleges that a case or controversy exists regarding the Heenan patents based on a number of communications that arose "[i]n connection with efforts to resolve the structured adhesives actions [with Avery] in 2005 and 2007."[1] (Dkt. 1, Complaint at ¶ 23). In particular, 3M alludes to becoming aware of Avery monitoring the 3M DG3 product during those discussions. (*Id.*). 3M also claims that during those discussions it became aware that Avery had sought reissue of the Heenan patents. (*Id.* at ¶¶ 24-29). 3M then concludes, without any support, that because it was the only Avery competitor that sold full cube technology, the only reason that Avery could have sought reissue was to better position the patents for litigation against 3M. (*Id.* at ¶ 29).

None of these allegations can form any basis for establishing a case or controversy. 3M identifies no specific statements from 2005-2007 from which one could objectively draw the conclusion that a real and imminent risk of litigation exists regarding the Heenan patents. Instead, 3M makes general allegations about actions

---

[1]   Avery refers to this as the "Graphics litigation".

Avery was taking in the Patent Office and then draws its own subjective conclusions about what those actions meant.

In the first instance, 3M is attempting to sidestep the prohibitions in the confidentiality agreements it entered with Avery in 2005 and 2007 and that Avery identified when it first filed its motion to dismiss the 3M declaratory judgment claims. As Avery explained in its first motion to dismiss, those agreements explicitly prohibit using any information learned during the settlement discussions to establish jurisdiction for a declaratory judgment action. (Maier Decl. at ¶ 12, Exs. A, B at ¶ 4). Yet, that is exactly what 3M is trying to do. It is relying on facts that it learned during the 2005-2007 discussions as a basis for seeking declaratory relief. (Dkt. 1, Complaint at ¶¶ 23-24).

Moreover to the extent that 3M argues that it is relying on conclusions it drew from facts obtained during those discussions, rather than the facts themselves, the conclusions still cannot be used. The conclusion would not exist but for the facts 3M learned during the confidential discussions. Moreover, the subjective conclusions that 3M draws are not legally relevant. *See Prasco*, 537 F.3d at 1338-1339 (explaining that a party's subjective belief that an infringement suit might be filed is insufficient to establish a case or controversy).

For example, 3M concludes that because it is the only competitor of Avery in the full cube retroreflective sheeting market, the only reason that Avery could have been seeking a reissue was to strengthen its case against 3M. This is factually wrong. ██████

████████████████████████████████████████████████████████████

(Maier Decl. at ¶ 14). Second, 3M is legally wrong to rely on its subjective belief that

Avery put its patents in reexamination so that it could assert them against 3M as the basis for establishing a case or controversy. *See Prasco*, 537 F.3d at 1338-1339 (emphasizing that it is the reality of the threat of injury that is relevant to the standing inquiry, not the plaintiff's substantive apprehensions).  In sum, 3M's reliance on information from 2005-2007 cannot form the basis for declaratory relief.

### 2.    No Discussion from 2009 Is Factually Sufficient To Establish a Case Or Controversy

After going through the communications from 2005-2007, 3M then avers that "Avery next raised the Heenan patents with 3M in 2009." (Dkt 1, Complaint at ¶ 30). 3M claims that two years later, out of the blue, Avery's Chief Intellectual Property Counsel, Raj Sardesai, called 3M's Chief Intellectual Property Counsel, Kevin Rhodes, on March 31, 2009, and stated that 3M's product "may infringe" the Heenan patents and "that licenses are available." (*Id.* at ¶ 31).  3M next states that because of the communications from 2005-2007, it was aware of what Avery was talking about. (*Id.* at ¶ 32).

3M next alleges that Rhodes called Avery on April 2, 2009, and said that 3M was not interested in licensing the Heenan patents and asked if there was any new information that would cause 3M to reconsider its decision. (*Id.* at ¶ 33).  3M claims that Avery stated it had done an analysis on 3M's product and would send claim charts, which it never did. (*Id.* at ¶¶ 33-34).  3M then claims that while it participated in numerous confidential settlement negotiations with Avery since 2007, none of those discussions

11

ever involved the Heenan patents and, therefore, none of the discussions it had with

Avery in 2009 regarding the Heenan patents were confidential.  (*Id.* at ¶¶ 35-36).



During one

conversation, Mr. Sardesai asked Mr. Rhodes if 3M still had an interest in licensing the

Heenan patents.  (*Id*).  At no time did Mr. Sardesai ever threaten 3M with litigation or say

that 3M needed to take a license – which 3M apparently agrees with.  (*Id.*; Dkt. 1,

Complaint at ¶¶ 31, 36).  The March and April 2009 conversations, as all other

conversations that the two had up through 3M's filing of the complaint, were covered by

the confidentiality agreement that 3M refers to in paragraph 35 of its complaint.

(Sardesai Decl. at ¶ 8).



It is also supported by 3M's failure to

initially refer to conversations between Sardesai and Rhodes when 3M's outside counsel

first responded to questions regarding the basis of the claim in paragraph 106 of its original complaint.  (Friedemann Decl. Ex. E).

Further, Mr. Sardesai never told  Rhodes that Avery had done an analysis of 3M's products, nor did he promise to send claim charts regarding the Heenan patents and 3M's product to Rhodes.  (Sardesai Decl. at ¶ 10). ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

The credibility of 3M's pleading regarding the alleged communications between 3M and Avery in 2009 over the Heenan patents is highly suspect.  First, 3M's pleading violates the confidentiality agreement that the parties had in place to allow free and open communication between them. ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Third, 3M's pleading contradicts Mr. Rhodes' statement to Sardesai and Maier that the basis for 3M's declaratory judgment action was conversations that had occurred in 2005.  (Sardesai Decl. at ¶ 14; Maier Decl. at ¶ 10).  Fourth, 3M's pleading contradicts the original statement from its outside counsel that focuses on conversations "since 2005" and does not mention specific conversations allegedly taking place in 2009.  (Friedemann Decl. Ex. E).  Given 3M's contradictory positions, it cannot establish that the 2009 conversations occurred as it has pleaded.

### 3. No Discussions From 2009 Are Legally Sufficient to Create a "Case or Controversy" Establishing Declaratory Judgment Jurisdiction.

Even if the 2009 conversations did occur as 3M has pleaded – Avery saying that 3M "may infringe," asking if 3M wanted a license and then saying that it would send claim charts but never sending them – they are not sufficient to establish a case or controversy. In *Monsanto Company v. Syngenta Crop Protection, Inc.*, No. 4:07-CV-543 (CEJ), 2008 WL 294291 (Jan. 31, 2008 E.D. Mo.), the Court considered very similar facts. In that case, the patentee's managing patent attorney sent plaintiff a letter which "invited [plaintiff] to consider entering a licensing agreement ... [with] ... [patentee]." *Id.* at *1. Less than two months after receipt of this letter, plaintiff filed a complaint seeking a declaration of invalidity and non-infringement concerning the patent. The court dismissed plaintiff's complaint, holding that "[patentee's] single letter to [plaintiff] does not establish 'a course of conduct that shows a preparedness and willingness to enforce its patent rights ...' For example, there is no indication that [patentee] has provided [plaintiff] with a claims construction or an analysis of how [plaintiff's] ... product infringes the patent. Nor is there an indication that [patentee] has demanded the payment of royalties." *Id.* at *6 (internal citations omitted).

While courts sometimes find licensing negotiations sufficient to establish declaratory judgment jurisdiction, these cases involve actions not present here: significant negotiations and a "course of conduct that shows a preparedness and willingness to enforce its patent rights". *SanDisk Corp v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir 2007). In *SanDisk*, such negotiations included "a four- to five-hour

14

presentation by ... technical experts, during which they identified and discussed the specific claims of each patent and alleged that they were infringed," and, "a thorough infringement analysis presented by seasoned litigation experts," and "a packet of materials, over 300 pages in length." *Id.* at 1375, 1382. In *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.,* licensing discussions between the parties stretched over four years, and the court found that the party offering a license had "explicitly identified the patents it believes that Sony infringes, the relevant claims of those patents, and the relevant Sony products that it alleges infringe those patents." 497 F.3d 1271, 1285 (Fed. Cir. 2007).

By comparison, even 3M admits that "Avery never provided 3M with claim charts or other information relating to Avery's analysis of the Heenan patents and 3M's Diamond Grade™ DG3™ products." (Dkt. 1, Complaint at ¶ 34). *See The Wooster Brush Co. v. Bercom Intern., LLC*, No. 5:06CV474, 2008 WL 1744782 (N.D. Ohio Apr. 11, 2008) (granting patentee's motion to dismiss declaratory judgment claims for lack of an actual controversy where patent holder had never provided an infringement analysis). One statement that "licenses are available" is not a significant negotiation or a concrete threat of future litigation. For these reasons, the facts 3M pleaded concerning a possible Avery license does not establish the basis for a declaratory judgment action.

## C.   3M Cannot Manufacture Jurisdiction by Demanding a Covenant Not To Sue During A Pending Case

3M points to Avery's failure to agree to grant 3M a covenant not to sue regarding the Heenan patents as evidence of a case or controversy sufficient to support jurisdiction.

15

(Dkt. 1, Complaint at ¶¶ 44-45).  More specifically, 3M alleges that after it filed its original complaint, it asked Avery directly for confirmation that there was no case or controversy regarding the Heenan patents.  (*Id.* at ¶ 44).  It claims to have not received such confirmation.  (*Id.*).  3M also alleges that its outside counsel asked Avery's counsel whether Avery planned to sue 3M for infringement of the Heenan patents and that "Avery's counsel refused to answer 3M's question."  (*Id.* at ¶ 45).  While the events are not as 3M portrays them, they are, in any event, insufficient to support jurisdiction in this action.

First, 3M's request for a covenant not to sue did not go unanswered as 3M pleaded.  Rather, in response to 3M's counsel's question about Avery's plan to enforce the Heenan patents, Avery's outside counsel pointed out that the relevant question was what had happened before the complaint was filed, not what Avery intended to do in the future.  (*See* Friedemann Decl., Exs. D, F).  Consequently, Avery's counsel asked 3M to explain the basis for 3M's claim that Avery had indicated 3M needed to take a license to the Heenan patents.  (*Id.*).  3M's attempt to massage the facts into a scenario where its own post-filing actions create jurisdiction should be afforded no weight in determining jurisdiction here.

Objectively, one cannot draw a conclusion that Avery intended to sue by not responding as 3M had requested.  Indeed, the Federal Circuit has recognized that while a refusal to grant a covenant not to sue may be relevant, it is "not dispositive" to a determination of declaratory judgment jurisdiction.  *Prasco*, 537 F.3d at 1341 (quoting

16

*B.P. Chems., Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 980 (Fed. Cir. 1993)).  This is especially true when the request comes during litigation.

In *Prasco*, the plaintiff filed a declaratory judgment action, and then asked defendant for a covenant not to sue.  537 F.3d at 1334.  When the defendant responded that it did not plan to withdraw its motion to dismiss the complaint, plaintiff filed an amended complaint relying on defendant's refusal to agree to a covenant not to sue.  *Id.* The *Prasco* court found no declaratory judgment jurisdiction based on the parties' actions, stating that "[a] patentee has no obligation to spend the time and money to test a competitors' product nor to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit."  *Id.* at 1341.  *See also National Presort, Inc. v. Bowe Bell & Howell, Co.*, 663 F. Supp. 2d 505 (N.D. Tex. 2009) (finding that the patentee's failure to provide a covenant not to sue as to the plaintiff's products did not show a sufficient case or controversy); *Avante Intern. Technology, Inc. v. Hart Intercivic, Inc.*, No. 08-832-GPM, 2009 WL 2431993 (S.D. Ill. Jul. 31, 2009) (rejecting the argument that the patentee's failure to give the plaintiff a covenant not to sue showed a controversy existed).

3M's gamesmanship in filing sequential complaints, and demanding covenants not to sue in the interim should not be rewarded.  *Prasco,* 537 F.3d at 1341.  If this were an allowable procedure, then any party could manufacture jurisdiction by doing what 3M has done.  Every patent holder could be put in the position of having to provide a covenant not to sue or be faced with a declaratory judgment action.

17

**D.      Unrelated Prior Litigation Between Avery and 3M Should Be Given No Weight**

3M's reliance on past litigation with Avery is also insufficient for purposes of establishing an "actual case or controversy" over the Heenan patents.  3M states that "3M and Avery have a long history of fierce competition, as well as patent infringement litigation, both in the United States and overseas." (Dkt. 1, Complaint at ¶ 15).  3M refers to five instances of past litigation between the parties. (*Id.* at ¶¶ 16-21).  None of those prior litigations involved the Heenan patents or the 3M product at issue here.

Two of the five instances of litigation that 3M refers to were cases 3M filed.  3M's own actions cannot be used to support its allegation that Avery is likely to file suit.  Rather, actions sufficient to support declaratory judgment jurisdiction in the patent context require some affirmative act <u>traceable to the patentee</u>. *See Prasco*, 537 F.3d at 1339 ("Thus, there can be no controversy without a showing that this threat was real, imminent, and <u>traceable to defendants</u>.") (underlining added).  Because the 2001 and 2005 actions were filed by 3M – not Avery – they have no bearing on the question of whether an "actual case or controversy" exists with respect to the Heenan patents.

Next, the 2006-2007 litigation over diaper tape laminates and the May 2010 litigation involving label sheet assemblies are irrelevant to the inquiry here.  Litigation over different products and unrelated patents is afforded little to no weight in the analysis of declaratory judgment jurisdiction in a separate action. *Id.* at 1341.  For example, in *Prasco*, the declaratory judgment plaintiff argued that the patentee's prior infringement suit involving unrelated patents and different accused products "demonstrate[d] a genuine

18

risk" that the patentee would sue again. *Id.* The Federal Circuit rejected this argument, explaining that although past litigation is one of the factors to consider within the totality of circumstances, not all prior litigation is given equal weight. *Id.* Rather, "one prior suit concerning different products covered by unrelated patents is not the type of pattern of prior conduct that makes reasonable an assumption [of future litigation]." *Id.* at 1341.

Finally, with respect to the 2001 litigation, although the accused products at issue included retroreflective sheeting, the Heenan patents were not involved and the 3M products were not those 3M seeks relief on now. For purposes of determining declaratory judgment jurisdiction, the court is only concerned with the patents-at-issue. *See Bridgelux, Inc. v. Cree, Inc.*, No. C 06-6495 PJH, 2007 WL 2022024 (N.D. Cal. Jul. 9, 2007) (granting patentee's motion to dismiss plaintiff's declaratory judgment claims regarding three patents, even though the patentee had sued the accused infringer on other patents that <u>covered the same accused product</u>) (emphasis added). While the claims of the Heenan patents generally cover the geometry of microcubes used in retroreflective sheeting, the patents-in-suit in the 2001 litigation are directed primarily to tools used in continuous embossing processes for retroreflective sheeting. This weak relationship between the Heenan patents and some patents Avery asserted nine years ago is not the type that can establish an objective basis for a case or controversy. *Id.* at 9; *see also Prasco*, 537 F.3d at 1341 (prior litigation over unrelated patents "cannot alone create a real and immediate controversy" and "is entitled to only minimal weight in analyzing whether such a controversy has been created.").

19

As 3M points out, both parties in this action are global, diversified companies with large patent portfolios.  They are both entrenched in highly competitive markets involving numerous products.  It is not surprising that these two companies have crossed paths in the past.  Prior litigation over diaper tape and printing labels, however, should have no bearing on the question of whether an "actual case or controversy" exists with respect to the Heenan patents.  *Id.*

Numerous companies having hundreds of patents exist in the field of retroreflective sheeting.  No assumption of a "real and immediate threat" can be drawn from litigation unrelated to the Heenan patents.  Rather, the analysis must be based on the relationship between the parties with respect to the Heenan patents and the Heenan patents alone.  Viewed in that context, the relationship between Avery and 3M is nonexistent.

**E.      3M's Subjective Fears of Future Infringement Litigation Should Not Be Considered in Determining Declaratory Judgment Jurisdiction**

3M improperly attempts to rely on its own subjective beliefs to support jurisdiction.  3M's  complaint is filled with subjective assertions.  3M alleges that "[u]pon information and belief, Avery sought reissuance of the Heenan patents in an effort to better position the patents for litigation against 3M."  (Dkt. 1, Complaint at ¶ 29).  3M further states that "[o]n information and belief, for the past five years since 3M launched its Diamond Grade™ DG3™ products, Avery's strategy has been to raise the Heenan patents, and alleged 3M liability under those patents, as negotiation tactics in patent disputes between the companies."  (*Id.* at ¶ 50).  And "[o]n information and belief, if this

action is dismissed for lack of subject matter jurisdiction, Avery will sue 3M for infringement of the Heenan patents in a separate action in another court." (*Id.* at ¶ 51).

The first two of these subjective allegations again rely on the prohibited information obtained from 2005-2007 and should be disregarded. (Maier Decl. Exs. A, B at ¶ 4). The third subjective belief, that Avery might enforce the Heenan patents at some undefined point in the future, is not enough to establish declaratory judgment jurisdiction. Courts have held that declaratory relief jurisdiction must be established by objective and not subjective criteria. *See Prasco*, 537 F.3d at 1338-1339 (explaining that a party's subjective belief that an infringement suit might be filed is insufficient to establish a case or controversy, and that the patent holder must take concrete actions that create such apprehension); *Panavise,* 306 Fed. Appx. at 573 (holding that "the only basis for [plaintiff's] declaratory judgment complaint is its assumptions about a threat of future injury. Under settled law, [plaintiff] must present factual proof that such threat is real and immediate. [Plaintiff] failed to meet this threshold burden"); *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 610 (D. Del. 2009) (granting motion to dismiss where "controversy exists in the mind of only one side, which makes it speculative (as opposed to real) and one-sided (as opposed to between the parties)"). Consequently, 3M's subjective beliefs and fears are not legally relevant for establishing jurisdiction

## IV. CONCLUSION

3M has not pleaded facts which show there is a substantial controversy of sufficient immediacy and reality over the Heenan patents to warrant the issuance of a declaratory judgment. 3M has relied upon three to five year old prohibited conversations and a more recent informal question about a license that was also covered by confidentiality to show a threat of litigation. It has also relied on unrelated litigation between the parties and its subjective beliefs to support its claims. None of these individually, or taken together, establish a case or controversy over which the court should exercise jurisdiction. As such, 3M's complaint should be dismissed with prejudice.

DATED: September 27, 2010

_____s/ Kurt J. Niederluecke_____
Kurt J. Niederluecke (#271597)
Lora M. Friedemann (#259615)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

OF COUNSEL:

Charles K. Verhoeven
David Bilsker
Christopher E. Stretch
James E. Baker
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600 (tel.)
(415) 875-6700 (fax)

*Attorneys for Avery Dennison Corporation*

22